IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD LLOYD # B20846, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DAVID H. COAR |
| v. | ) | |
| | ) | No. 05 C 1499 |
| WARDEN - KENNETH R. BRILEY, | ) | |
| LIEUTENANT - AKINOLA IYIOLA, | ) | |
| LIEUTENANT - T. DAVIS K346 BADGE NO., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM, OPINION AND ORDER

Plaintiff Richard Lloyd ("Lloyd"), currently an inmate at Stateville Correctional Center, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that defendants Warden Kenneth R. Briley ("Warden Briley"), Lieutenant Akinola Iyiola ("Lt. Iyiola"), and Lieutenant T. Davis ("Lt. Davis") (or collectively "Defendants"), violated his constitutional rights.

Lloyd makes three claims. First, he alleges that on February 18, 2004, he was given six months of segregation for a disciplinary infraction. This disciplinary report is not at issue. On March 8, 2004, Lt. Iyiola moved him from Cell I1 C 12 to Cell I2 E 12 which had no lights or electricity and wires were hanging out of the walls. He remained there until April 9, 2004, a total of 33 days.

Second, Lloyd claims that on June 18, 2004, he was moved to Cell I1 G 7, which had no water. On June 21, 2004, he asked Lt. Davis to get him some ice because of the heat. Lt. Davis told him to drink out of the toilet. About 30 minutes later, Lloyd was placed in a strip cell with no

sheets, toilet paper, or any personal property. He remained there for 13 days and then was moved back to the same cell with no water. Lloyd claims that he was not issued a disciplinary report.

Third, Lloyd claims that on June 18, 2004, he received a notice that his segregation time of six months had been reduced to three months. However, he was not released from segregation and was forced to serve the entire time.

Lloyd filed a motion for summary judgment to which Defendants filed both a cross-motion for summary judgment and a response. Lloyd filed a response to Defendants' cross-motion for summary judgment and Defendants filed a reply. For the following reasons, the court grants defendants Briley, Iyiola, and Davis's cross-motion for summary judgment and denies Lloyd's motion for summary judgment.

## I. Standard of Review on a Motion for Summary Judgment and a Cross-Motion for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©; *see also Lewis v. Holsum of Ft. Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) ("If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In order to present a genuine issue of material fact, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (*citing First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Once the moving party has sustained the initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. *Id.* at 324. Moreover, a party may not attempt to survive a motion for summary judgment through the submission of an affidavit that contradicts testimony in his deposition or other sworn testimony. *Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632, 638 (7th Cir. 2004); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001).

Because both parties have moved for summary judgment, the court evaluates each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir. 1987). However, this does not necessarily mean the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. *Id.*

## II. Facts

### A. Plaintiff's Local Rule 56.1 (a)(1)(3) Statement of Material Facts and Defendants' Response

Lloyd has set forth the following statement of facts that he contends are both material and undisputed and entitle him to summary judgment on his claim of denial of due process of law. Defendants responded to each statement

1. Plaintiff was never given a disciplinary report when he was placed in a strip cell for 13 days.

Response: Defendants deny this statement as plaintiff was not placed in a cell designated as a strip cell. See Exhibit A.

2. Plaintiff was not allowed to present his case before an adjustment committee or call witnesses in his behalf.

Response: Defendants deny this statement as there was no case for him to present. Inmates may be placed in any prison or cell within a prison at the discretion of the Department of Corrections.

3. Plaintiff's segregation time was cut in half from 6 months to 3 months, yet plaintiff was made to do the whole 6 months without any due process of law.

Response: Defendants object to the form of this statement as it is a legal conclusion. Without waiving said objection, Defendants admit that the plaintiff's segregation time was cut in half, but it was cut in half after plaintiff already served the segregation time. Furthermore, placement in segregation is not a constitutional violation as it does not pose an atypical significant hardship upon plaintiff. Because there was no atypical significant deprivation, plaintiff was not

4

entitled to any due process rights. However, plaintiff was still afforded due process rights with regards to being sent to segregation.

4. Plaintiff was placed in a cell with no running water at all for a period of five days. Then after being removed from the strip cell, was placed back in the same cell I 16-7 with no running water.

Response: Defendants deny this statement as he was not placed in any cell for a period of five days. *See* Exhibit C.

5. Plaintiff was placed in a cell with no lights at all for a period of 33 days. Thirty-three days sitting in a dark cell.

Response: Defendants deny this statement as he was not placed in a cell with no lights for a period of 33 days. *See* Exhibit A.

6. Plaintiff was subjected to cruel and unusual punishment when he was denied toilet paper, soap, sheets or a toothbrush for 13 days. He was in a strip cell, with only a urine-stained mattress to rest upon.

Response: Defendants deny this statement as he was not placed in a strip cell. *See* Exhibit A.

7. Plaintiff was subjected to these incidents by the defendants who knew or should have known the acts were unlawful. They acted in bad faith.

Response: Defendants object to this statement as to the form of the statement as it is overbroad and vague. Without waiving said objection, defendants deny this statement as he was not subjected to any such incidents.

### B. Defendants' Local Rule 56.1(a)(3)(A) and (B) Filing

Plaintiff Richard Lloyd is an inmate currently incarcerated by the Illinois Department of Corrections at Stateville Correctional Center. At all times material to the allegations made in his complaint, he was incarcerated at Stateville Correctional Center.

Defendant Kenneth R. Briley was warden at Stateville Correctional Center at the time of the alleged violations. He is being sued because Lloyd alleges that he was held in segregation beyond the period that he should have been kept there because his segregation time had been reduced.

Defendant Akinola Iyiola was a Correctional Lieutenant at Stateville Correctional Center at the time of the alleged violation. He is being sued because Lloyd alleges that he placed him in a cell with no lights and wires handing out of the walls from March 8, 2004, until April 9, 2004.

Defendant T. Davis was a Correctional Lieutenant at Stateville Correctional Center at the time of the alleged violation. He is being sued because Lloyd alleges that Davis failed to give him a cup of ice and told him to "drink out of the toilet" and then placed him in a strip cell for 13 days starting on June 21, 2004.

Lloyd suffered no physical injuries as a result of the allegations in his complaint. Plaintiff's Deposition at p. 40.

Lloyd was sent to segregation on February 18, 2004, for a disciplinary report that he received regarding charges of posing a security threat and receiving hate mail, which was dated January 21, 2004. *Id.* at pp. 14, 16.

Lloyd received six months of segregation time as a result of being found guilty of the violation. *Id.* at pp. 16-17. The six months of segregation was reduced to three months by the

Warden on August 19, 2004, and signed off on by the Director on September 1, 2004. *Id.* at pp. 16 and 17.

Lloyd alleges that in August 2004, he told Warden Briley that he should have been released from segregation and he responded that he would get on top of it. *Id.* at p. 41. Lloyd admits that he was released from segregation shortly after, within about a week. *Id.* at pp. 41-42.

Lloyd was placed in a cell that had a working toilet that worked for approximately two weeks after he arrived in the cell. Lloyd alleges that the amount of time that he went without a working toilet in his cell was two days. *Id.* at p. 21.

Lloyd was out of his cell to go to medical between 10 and 20 times from February to June 2004. *Id.* at p. 23. Lloyd was afforded showers one time per week from February to June 2004. *Id.* at p. 23. Lloyd was allowed to go to the yard for five hours per week from February to June 2004. *Id.* at p. 22.

Lloyd never filed a grievance about the toilet not working in his cell. *Id.* at p. 24.

Lloyd's cell had a window and a vision panel that was left open in order to let light into his cell. *Id.* at pp. 24-25. There was a working light outside of the Lloyd's cell I2 E 12. *Id.* at p. 25.

Lloyd was housed in cell I1 G 7 from June 18 to June 21, 2004. Lloyd alleges that there was no water in the cell for these three days, but he was fed in his cell and given something to drink with two of his meals. *Id.* at pp. 29-30.

Lloyd was given ice whenever he requested it during the three days he allegedly had no water in his cell, except for one time when Lt. Davis refused to provide him with ice. *Id.* at pp. 31-32.

There were no cells designated as strip cells or segregation cells in I-House at Stateville. Exhibit A.

### C. Plaintiff's Statement of Disputed Facts

1. Whether the plaintiff suffered when he was kept in a cell for 33 days with no light.

2. Whether plaintiff was kept in a cell for five days with no running water.

3. Whether plaintiff was placed in a strip cell for 13 days without a disciplinary report being written.

4. Whether Warden Briley made the plaintiff do three months over his segregation out date.

## III. Analysis

Defendants argue first that 42 U.S.C § 1997e(e) of the Prison Litigation Reform Act[1] prohibits Lloyd from bringing a civil action for mental or emotional injury because he has not shown that he suffered any physical injuries as a result of the actions or inactions of Defendants.

In *Zehner v. Trigg*, 133 F.3d 459 (7th Cir. 1997) (*"Zehner II"*), the Seventh Circuit rejected a constitutional challenge to 42 U.S.C. § 1997e(e). *Citing Carey v. Piphus*, 435 U.S. 247, 264 (1978), the Seventh Circuit recognized that mental and emotional distress may be compensable injuries under § 1983. *Zehner II*, 133 F.3d at 461. The Seventh Circuit then began its analysis "from the premise that 'Congress may not effectively nullify the rights guaranteed by the Constitution by prohibiting all remedies for the violation of those rights.'" *Id.* (quoting *Zehner v. Trigg*, 952 F.Supp. 1318, 1329 (S.D. Ind.1997) ( *"Zehner I"* ), *aff'd, Zehner II* ). However, that

---

[1] 42 U.S.C. §1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

8

"does not mean that a remedy of damages must be available for every constitutional violation." *Zehner II*, 133 F .3d at 461. Congress created § 1983 and it has never been held that such a remedy is constitutionally mandated. *Id.* at 461-62. "[I]t would be odd to conclude that Congress may not take away by statute what it has given by statute." *Id.* at 462. Section 1997e(e) was held to be "a permissible restriction on the availability of damages for constitutional violations." *Id.*

The Seventh Circuit further recognized that "there is a point beyond which Congress may not restrict the availability of judicial remedies for the violations of constitutional rights without in essence taking away the rights themselves." *Id.* (quoting *Zehner I*, 952 F.Supp. at 1331). Section 1997e(e) cannot be found to go beyond this point because it still leaves prisoners with the remedy of injunctive and declaratory relief, as well as contempt proceedings to enforce such relief. *Zehner II*, 133 F.3d at 462. Moreover, the Constitution does not require an individually effective remedy for every constitutional violation. *Id.* It was sufficient in *Zehner II* that, even though the *Zehner* plaintiffs lacked standing to pursue injunctive relief, other prisoners could have such standing or a claim for damages could be pursued at the point any physical injury arose.

The Seventh Circuit further considered the possible remedies available to an inmate whose conditions of confinement allegedly violated the Constitution in *Calhoun v. DeTella*, 319 F.3d 936 (7th Cir. 2003), and concluded that 42 U.S.C. § 1997e(e) did not foreclose an action for nominal or punitive damages for an Eighth Amendment violation involving no physical injury.

As a result of the allegedly inhumane conditions at Stateville, Lloyd did not suffer any physical injury and seeks damages for the mental anguish he suffered while in the cells without light and water and for being held in segregation after his time was reduced. He accordingly cannot bring an action for money damages pursuant to § 1997e(e), although injunctive or declaratory relief could

9

still be available to him if he were still confined in one of these cells under the same conditions as in 2004 and could demonstrate that these conditions violated the Eighth Amendment. *Accord Harper v. Showers*, 174 F.3d 716, 719-20 (1999) (prisoner who cannot seek damages for mental suffering because of § 1997e(e) still can seek injunctive relief).

However, Lloyd has also sought punitive damages in addition to compensatory damages for the alleged violation of his Eighth Amendment rights. Lloyd therefore may be entitled to punitive damages if the conditions of his confinement violated the Eighth Amendment's prohibition against cruel and unusual punishment.

The Eighth Amendment imposes on prison officials the duty to "provide humane conditions of confinement...." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). However, prison conditions violate the Eighth Amendment only when they exceed "contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994), *citing Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).

In order to establish Eighth Amendment liability, a plaintiff must meet two requirements: first, he must show that the challenged conditions of confinement were objectively so serious as to amount to the denial of a basic human need; second, he must show that the defendant official acted with deliberate indifference. *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). As the Court of Appeals has explained, "the Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only to that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

**A. Confinement in a Cell with No Electricity or Light**

Defendants do not contest that Lloyd's cell had no electricity or light but claim he was not in the cell for 33 days. However, Defendants' Exhibit C shows that Lloyd was in Cell I2 E 12 from March 8, 2004, until April 9, 2004. Regardless of how long Lloyd was actually in the cell, these conditions did not violate his constitutional rights.

Although Lloyd's cell did not have a working light, he was not left in total darkness for 33 days, a condition that could fall below "contemporary bounds of decency." Lloyd's cell had a window and a vision panel that was left open in order to let light into his cell. Plaintiff's Deposition at pp. 24-25. There was a working light outside of the Lloyd's cell I2 E 12. *Id*. at p. 25. Lloyd admits that he was able to read in the cell, although minimally. *Id*. at p. 25.

Given that the totality of Lloyd's conditions of confinement were otherwise acceptable while in cell I2 E 12, the lack of a light in his cell fails to fall so far below minimum standards as to violate the Eighth Amendment. The matter does not rise to the level of cruel and unusual punishment. *Contrast Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("inmates cannot expect the amenities, conveniences and services of a good hotel"), with *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir.1992) (objective component met where prison conditions were "strikingly reminiscent of the Black Hole of Calcutta").

Nor is exposed wiring necessarily actionable. In *Morissette v. Peters*, 45 F.3d 1119 (7th Cir. 1995), plaintiff was confined for nine days in a cell in which exposed wiring just inches above his bed resulted in two shocks. The Seventh Circuit called this a "minor hazard that was easily avoided," and an "unpleasant inconvenience," not a violation of his constitutional rights. *Id.* at 1123.

Moreover, Lloyd suffered no real physical injury-only understandable frustration-because of the lack of lighting in this cell. Because no constitutional violation occurred in regard to the lack of lighting in his cell and the exposed wiring, Lloyd is not entitled to punitive damages.

**B. Lack of Running Water in the Cell**

Lloyd claims that on June 16, 2004, he was moved to Cell I 16 7, which had no water. On June 21, 2004, he asked Lt. Davis to get him some ice because of the heat. Lt. Davis told him to drink out of the toilet.

Defendants do not dispute that Lloyd did not have running water in the cell; however, they point out that Lloyd was provided something to drink with two of his three meals, Plaintiff's Deposition at pp. 29-30, and that correctional officers gave him ice whenever he requested. *Id*. at pp. 31-32.

Lt. Davis was the only officer who refused to bring Lloyd ice on one occasion and told him to drink out of the toilet. *Id.* p. 31. Not being given ice on one occasion is simply not a constitutional violation. To amount to a constitutional violation, a condition of confinement must result in "extreme deprivations" of a basic necessity. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' . . . 'only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Id*. (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

In addition, verbal harassment, while unprofessional and inexcusable, does not rise to the level of a constitutional violation. *See Haslam v. Page*, 2005 WL 2100073 *3 (S.D. Ind.), *citing*

*Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (derogatory remarks do not constitute a constitutional violation).

Because no constitutional violation occurred in regard to not being given ice on one occasion and the use of crude language, Lloyd is not entitled to punitive damages.

**C. Placement in Strip Cell without a Hearing**

About 30 minutes after Lt. Davis refused to give Lloyd any ice, Lt. Davis moved Lloyd to a strip cell. Lloyd remained there for 13 days with no sheets, toilet paper, or any personal property. He then was moved back to the same cell with no water. Lloyd claims that he was not issued a disciplinary report before being moved to this strip cell.

Defendants argue that there are no strip cells in I House; therefore Lloyd could not have been moved to one. The court finds it immaterial what this particular cell is called. Lloyd is making two claims in regard to his placement in this cell. First, that Lt. Davis took it upon himself to place Lloyd in the cell without due process and, second, that the conditions in this cell violated his Eighth Amendment rights.

With the Supreme Court's holding in *Sandin v. Conner*, 515 U.S. 472 (1995), the law governing procedural due process in disciplinary hearings and state-created liberty interests changed profoundly. In *Sandin* at 484, the Supreme Court held that state-created liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin* altered the method of determining when a liberty interest attaches

significantly, shifting the focus from mandatory language to a determination as to whether the restraint imposes an atypical and significant hardship on the inmate.

In *Sandin*, the Supreme Court determined that neither Hawaii's prison regulations nor the Due Process Clause afforded a prisoner a protected liberty interest that would entitle him to procedural protections before receiving a sanction of 30 days' disciplinary segregation. As the Court emphasized, confinement in segregation did not add any time to the inmate's sentence and such confinement was within the range of treatment to be expected as it was neither atypical nor imposed a significant hardship on an inmate who had disobeyed prison rules.

Before the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974), spring into play, a prisoner must suffer an atypical, significant deprivation in which a state has created a liberty interest. The Seventh Circuit has consistently held that disciplinary segregation in Illinois is not an atypical, significant deprivation. *Lekas v. Briley*, 405 F.3d 602 (7th Cir. 2005); *Williams v. Ramos*, 71 F.3d 1246, 1249 (7th Cir. 1995).

All of the cases that Lloyd has cited finding that an inmate had a right to a hearing before being moved to disciplinary segregation or a strip cell or being deprived of his property were decided before *Sandin*. Lloyd accordingly was entitled to a hearing only if the conditions of the cell constituted an atypical, significant deprivation.

Lloyd asserts that he was in this cell with no sheets, toilet paper, or any personal property and with only a urine-stained mattress to sleep on. As discussed above, in order to establish Eighth Amendment liability, a plaintiff must meet two requirements: first, he must show that the challenged conditions of confinement were objectively so serious as to amount to the denial of a basic human

14

need; second, he must show that the defendant official acted with deliberate indifference. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 298-99.

In *Neal v. Clark*, 938 F.Supp. 484 (N.D. Ill. 1996), the district court summarized a number of cases finding that the conditions did not violate the Eighth Amendment:

> Courts have consistently rejected conditions of confinement claims involving substantially worse conditions than Neal describes. *See, e.g., Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (being deprived of toilet paper for five days; not provided with soap, toothpaste, or a toothbrush for 10 days; and kept in a filthy, roach-infested cell for 28 days does not violate the constitution, where the conditions were temporary and affected only one prisoner, and the affected inmate suffered no physical harm); *Lock v. Clark*, No. S90-327 (RDP), 1992 WL 559660, *9 (N.D.Ind. Mar. 17, 1992) (prisoner who, for seven days, was deprived of all personal property, including soap and hygienic items; was not permitted to take a shower; was confined to a strip cell; was given only one and a half rolls of toilet paper; and was left to wear nothing but his undershorts was not denied "the minimal civilized measures of life's necessities"); *Stone-El v. Sheahan*, 914 F.Supp. 202, 206 (N.D.Ill.1995) (jail inmate who was subjected to such conditions as having to sleep on the floor without a mattress; frequently having no toilet paper; receiving only two clothing changes in two months; seeing rats in the jail; and having poor ventilation at the jail failed to allege conditions egregious enough to constitute unconstitutional punishment).

Although Lloyd was in this cell for 13 days, a few days longer than several of the plaintiffs identified in these cited cases, he also stated in his deposition that during all the time he was in segregation, he was afforded showers one time per week and allowed to go to the yard for five hours per week. Plaintiff's Deposition at pp 22-23. Being in this cell for 13 days without his personal property was undoubtedly uncomfortable, but these conditions failed to fall below "contemporary bounds of decency." Lloyd accordingly was not entitled to a hearing before being moved to this cell as its conditions did not impose an atypical, significant hardship. Nor is Lloyd entitled to punitive damages because no constitutional violation occurred in regard to the conditions of this cell.

**D. Failure to Release from Segregation**

Lloyd claims that on June 18, 2004, he received a notice that his segregation time of six months had been reduced to three months. However, he was not released from segregation until August 11, 2004, and was therefore forced to serve the entire time. Lloyd contends that Warden Briley is responsible because he signed the papers reducing Lloyd's time in segregation but failed to ensure that Lloyd was then released. Lloyd argues that this constituted deliberate indifference to his due process rights.

Defendants do not dispute that Lloyd served the entire six months in segregation to which he had originally been sentenced rather than being released three months earlier. They do point out that Lloyd alleged that in August 2004 he told Warden Briley that he should have been released from segregation, and Briley responded that he would get on top of it. Lloyd was released from segregation about a week later. Plaintiff's Deposition at pp. 41-42.

Nonetheless, to the extent Lloyd claims that his overstay in segregation violated the Constitution, it must be dismissed. Such a claim is indistinguishable from that advanced by the plaintiff in *Williams v. Ramos*, 71 F.3d 1246 (7th Cir. 1995). Williams asserted that defendants violated his due process rights by keeping him in disciplinary segregation for 19 days longer than the maximum punishment period allowed for the offense he committed. Citing *Sandin v. Conner*, 515 U.S. 472 (1995), the Seventh Circuit held that an overstay in disciplinary segregation would not violate due process if it did not inflict an atypical, significant deprivation. *Id*. at 484. The Seventh Circuit has held that disciplinary segregation in Illinois is not an atypical, significant deprivation. *Lekas v. Briley*, 405 F.3d 602 (7th Cir. 2005); *Williams*, 71 F.3d at 1249. Because Lloyd did not suffer any atypical, significant deprivations, he therefore was not deprived of due process.

Consequently, Defendants cannot be held liable for violating Lloyd's constitutional rights by keeping him in disciplinary segregation for an additional three months.

**IV. Conclusion**

For the foregoing reasons, the court grants Defendants' cross-motion for summary judgment and denies Lloyd's motion for summary judgment. The Clerk is directed to enter judgment in favor of defendants Warden Kenneth R. Briley, Lieutenant Akinola Iyiola, and Lieutenant T. Davis and against plaintiff Richard Lloyd pursuant to Fed. R. Civ. P. 56. This action is dismissed with prejudice in its entirety.

IT IS SO ORDERED.

ENTER:

/s/David H. Coar
_____
David H. Coar,
United States District Court Judge

DATED: March 23, 2007